Brian C. Lake, Bar No. 020543
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
BLake@perkinscoie.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik,<br><br>                    Plaintiff,<br><br>          v.<br><br>Josephine Pereira, a natural person; DCR Strategies, Inc.,<br><br>                    Defendants. | No. 2:13-CV-02032-PHX-DKD<br><br>**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>**AND**<br><br>**MEMORANDUM IN SUPPORT**<br><br>Oral Argument Requested |

## Motion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Josephine Pereira and DCR Strategies, Inc. respectfully move this Court to dismiss with prejudice all claims asserted against them in Plaintiff's Complaint.  This motion is accompanied by the supporting memorandum included herewith, and a separate request for judicial notice of certain attached public records.

## Memorandum

This is a defamation and false light action filed by a lawyer against an opposing party (and its employee/in-house counsel) against whom he is currently litigating in a separate proceeding.  The claims are based entirely on statements in two emails sent by the in-house counsel for the opposing party in which she stated her negative opinion about the lawyer's performance and competence as an attorney and pointed out the true fact that he has been disciplined several times by the Arizona Supreme Court.  This Complaint

should be dismissed for two independent reasons: (1) the allegedly defamatory statements are all covered by the absolute litigation privilege against defamation and false light claims, and (2) all the statements and inferences in the emails were either non-actionable subjective expressions of pure opinion or were substantially true.

**Factual Background**

Defendant DCR Strategies, Inc. ("DCR") is a Canadian corporation with its headquarters near Toronto, Canada that produces and sells prepaid reward cards. Defendant Josephine Pereira is an attorney and in-house counsel for DCR with the title Business Development Counsel. Ms. Pereira is domiciled in and a citizen of the State of New York (DCR and Ms. Pereira are referred to collectively as the "Defendants"). On or about May 9, 2011, an Arizona-based Nevada limited liability company called Reward Card Solutions, LLC ("RCS") signed a written Prepaid Card Agreement ("Agreement") with DCR to purchase prepaid reward cards, subject to certain terms and conditions. The Agreement between DCR and RCS contains the following mandatory arbitration clause:

> 10.3 **Any dispute or claim arising out of or in connection with this Agreement shall be settled by arbitration pursuant to the *Ontario Arbitration Act*, R.S.O. 1991, c.17.** There shall be no appeal from the arbitral tribunal's decision(s), which shall be final and binding. **The arbitration shall be confidential.** For greater certainty, in addition to their rights and obligations under Article 7 of this Agreement, all awards in the arbitration, all materials in the proceedings created or used for the purpose of the arbitration, and all materials and information produced or exchanged during the arbitration, save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right or to enforce or set aside an award in bona fide legal proceedings before a competent court.

Agreement § 10.3 (emphasis added).

RCS eventually came to believe that DCR had breached its obligations under the Agreement. However, rather than commencing an arbitration to assert those claims, RCS retained an Arizona attorney named Peter Strojnik (the plaintiff in this case), and on August 20, 2013 Mr. Strojnik filed a lawsuit on behalf of RCS against DCR in Arizona Superior Court asserting claims for breach of contract (case No. CV2013-011504) (the

"Arizona Lawsuit").[1]  The complaint in the Arizona Lawsuit attached a copy of the Agreement, and expressly alleged that "[t]his matter arises out of contract."

After filing the Arizona Lawsuit, Mr. Strojnik sent a copy of the complaint to DCR's headquarters in Canada by certified mail.  After receiving and reviewing that complaint, on August 28, 2013, DCR's in-house counsel, Ms. Pereira, called Mr. Strojnik and asked him why he had filed the action in an Arizona court when the dispute was clearly subject to the mandatory arbitration clause in the Agreement.  The parties disagree about what was said during that phone call, but they agree that at that time Mr. Strojnik did not give a reason why he had filed an action in Superior Court in Arizona rather than commencing an arbitration, and that Mr. Strojnik abruptly terminated the call.

That same day, Ms. Pereira sent an email to Mr. Strojnik with a "cc:" to Alex Callan, the manager of RCS, and a subject line that read "RCS v. DCR" ("Email 1"):

> Peter:
>
> Since you hung up the phone on me, there will be **no** resolution to this matter and I will have our firm move to dismiss your ridiculous complaint (which even a 1st year law student could have seen you did this all wrong) and force your client to arbitrate this matter in Canada as per the contract.  Honestly, you should not be practicing law if you so incompetently represent clients.
>
> I must say, that for an attorney currently on probation after numerous suspensions with the state bar association (which followed client complaints for misconduct and malpractice), you would tread more carefully.  I will be making the appropriate complaint with the Arizona state bar today since you obviously are still not fit to practice law.
>
> We will now not be settling any matter with your client and will move to dismiss this frivolous action as well as request sanctions against you from the court.

Email 1 (a copy is attached as Exhibit 1 to the Complaint in this matter).

---

[1] Defendants strongly dispute the factual and legal basis of RCS' breach of contract claims, and DCR also has counterclaims that it intends to assert against RCS.  However, since all of these claims unquestionably arise out of or in connection with the Agreement, DCR recognizes that they can only be addressed in an arbitration proceeding conducted pursuant to the provisions of the Ontario Arbitration Agreement as the parties agreed, so DCR refrains from detailing those arguments here.

1    Later that same day, Ms. Pereira, while intending to send another email to "Peter
2    Strojnik," mistakenly sent an email to an individual named "Peter Tuovi" (a member of
3    DCR's board of directors, who is also an attorney) with a "cc:" to RCS' manager Alex
4    Callan, and a subject line that read "Lawsuit" ("Email 2").  That email states:

> And so you know, our firm is making a limited appearance to
> dismiss, meaning you cannot confer personal jurisdiction over DCR
> in such a matter.  If you happen to have gotten a judgment against
> DCR, you know it would be worthless based on Full Faith and
> Credit, so good luck.  You really screwed this one up because you
> cannot take constructive criticism over what is a defective lawsuit.

9    Email 2 (a copy is attached as Exhibit 2 to the Complaint in this matter).  These two
10   emails contain the only statements by Defendants that the Complaint alleges were
11   published to a third party (in both cases, to RCS' manager Alex Callan), so these are the
12   only two communications containing allegedly false statements or false implications on
13   which the Complaint's defamation and false light claims could possibly be based.

14       Just two days after these emails were sent, Mr. Strojnik filed this action in Superior
15   Court against Ms. Pereira and DCR, naming himself as the sole plaintiff and alleging
16   claims for defamation and false light invasion of privacy.  On October 7, 2013,
17   Defendants removed this action to federal court based on the parties' diversity of
18   citizenship.  The Arizona Lawsuit between RCS (represented by Mr. Strojnik) and DCR is
19   still active in Superior Court.  On September 27, 2103, DCR filed a Motion to Dismiss or
20   in the Alternative to Stay the Action, based primarily on the Agreement's mandatory
21   arbitration clause.  That motion is currently pending.

22                                    **Legal Standards**

23       To survive a motion to dismiss for failure to state a claim, a complaint must contain
24   more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of
25   action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  There must be factual
26   allegations sufficient to "raise a right to relief above the speculative level," *id.*, that "'state
27   a claim to relief that is plausible on its face.'"  *Clemens v. DaimlerChrysler Corp.*, 534
28   F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

1    The required elements for Plaintiff's claims of both defamation and false light

2    invasion of privacy under Arizona law are set forth in *Godbehere v. Phoenix Newspapers,*

3    *Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989).  "To be defamatory, a publication must be false

4    and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach

5    plaintiff's honesty, integrity, virtue, or reputation."  *Id.* at 341, 783 P.2d at 787.  The

6    statement at issue must have been "published" to a third party and, "to be defamatory,

7    [the] publication must be false, and truth is a defense."  *Id.*  "False light invasion of

8    privacy, however, protects against the conduct of knowingly or recklessly publishing false

9    information or innuendo that a 'reasonable person would find highly offensive.'"  *Id.* at

10   340, 783 P.2d at 786 (italics omitted).  "The standards for proving false light invasion of

11   privacy are quite 'stringent'" and can only be met "when something untrue has been

12   published about an individual, *or* when the publication of true information creates a false

13   implication about the individual."  *Id.* at 340-41, 783 P.2d at 786-87 (citation omitted).

14   As a result, under Arizona law, claims for defamation and false light both require that the

15   defendant published a false statement or a false implication about the plaintiff.

16                                          **Argument**

17   **I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION OR**
     **FALSE LIGHT BECAUSE OF THE ABSOLUTE PRIVILEGE FOR**
18   **STATEMENTS RELATED TO PENDING LITIGATION.**

19          Where, as here, an attorney for a party (or the party itself) makes an allegedly

20   defamatory statement about an opposing party or its counsel in a communication that has

21   at least some relation to a pending litigation, the statement is absolutely privileged against

22   any claims for defamation or false light invasion of privacy as a matter of law.  Thus, the

23   Complaint fails to state a claim on which relief can be granted, and must be dismissed.

24          **A.    The Litigation Privilege is an Absolute Defense to Both Defamation and**
                    **False Light Claims.**
25

26          The Arizona Supreme Court recognized the so-called "litigation privilege" or

27   "judicial proceeding privilege" for alleged defamatory statements in *Green Acres Trust v.*

28   *London*, 141 Ariz. 609, 688 P.2d 617 (1984) (en banc).  The court held that:

"[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." An attorney is protected by the absolute privilege because "[t]o subject him to actions for defamation would fetter and restrain him in the fearless discharge of the duty which he owes to his client, and which the successful administration of justice demands."

*Id.* at 613, 688 P.2d at 621 (*quoting* Restatement (Second) of Torts § 586 cmt. c).[2]

"In order to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding." *Id.* The content and manner of the communication only needs to "bear 'some relation to the proceeding.'" *Id.* at 614, 688 P.2d at 621. *See also Bailey v. Super. Ct.*, 130 Ariz. 366, 368, 636 P.2d 144, 146 (Ct. App. 1981) ("The defense of absolute privilege is available if the defamatory statements have *some relation to the judicial proceedings*, even though they may not constitute evidence relevant and material from a strictly legal evidentiary standpoint. . . . If the party [to the pending litigation] is made the subject of a suit for defamation, *all doubts as to the relevancy should be resolved in his favor*.") (emphasis added) (citations omitted).

The Court in *Green Acres* further explained:

The privilege protects judges, parties, lawyers, witnesses and jurors. The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense. Whether the privilege exists is a question of law for the court, and may be properly raised in a motion to dismiss, if the facts establishing the occasion for the privilege appear in the pleadings.

141 Ariz. at 613, 688 P.2d at 621 (citations omitted). The protections for attorneys recognized in *Green Acres* apply with equal force to the opposing parties in a pending or threatened litigation. *Hall v. Smith*, 214 Ariz. 309, 312, 152 P.2d 1192, 1195 (Ct. App. 2007).[3] The "socially important" purpose of this absolute privilege is to ensure "the

---

[2] The Court noted that absolute privilege must apply broadly to all communication "relating to pending or proposed litigation" because "[t]he conduct of litigation requires more than in-court procedures" and an attorney "must not be hobbled by the fear of reprisal by actions for defamation." *Id.* at 616, 688 P.2d at 624 (citation omitted).

[3] Since Ms. Pereira is an in-house attorney for DCR, her comments are qualified as absolutely privileged as either statements made by a party to litigation, or its attorney.

1    fearless prosecution and defense of claims which leads to complete exposure of pertinent

2    information for a tribunal's disposition," *Green Acres*, 141 Ariz. at 613, 688 P.2d at 621,

3    and to "'promote candid and honest communication between the parties and their counsel

4    in order to resolve disputes.'"  *Hall*, 214 Ariz. at 313, 152 P.2d at 1196 (citation omitted).

5    The absolute privilege for communications related to judicial proceedings "also

6    applies to any matter that constitutes a false light invasion of privacy."  *Yeung v. Maric*,

7    224 Ariz. 499, 502, 232 P.2d 1281, 1284 (Ct. App. 2010) (holding that the privilege

8    barred both defamation and false light claims based on statements made by an anticipated

9    witness in an arbitration).  As a result, if the absolute privilege applies, then it requires

10   dismissal of all of the claims alleged in the Complaint.

11         **B.**    **The Alleged Wrongful Statements are Protected by the Absolute

12   Litigation Privilege Because They Had At Least "Some Relation" to a Pending Litigation Between the Parties.**

13   The two emails sent by DCR's in-house counsel Josephine Pereira upon which the

14   Complaint bases its alleged defamation and false light claims fall squarely within the

15   absolute litigation privilege.  It is apparent from even a cursory examination that both of

16   these email communications had at least "some relation" to the previously-filed Arizona

17   lawsuit between RCS and DCR.  *Green Acres*, 141 Ariz. at 614, 688 P.2d at 621.  Email 1

18   was sent by Ms. Pereira to RCS' manager Alex Callan and its lawyer Mr. Strojnik, and the

19   subject line reads "RCS v. DCR".  The email specifically refers to the "ridiculous

20   complaint" filed by Mr. Strojnik on behalf of RCS and the fact that it inexplicably ignores

21   the clear mandatory arbitration clause in the parties' Agreement.  Ms. Pereira asserts her

22   opinion that filing the "frivolous action" despite the arbitration clause shows that Mr.

23   Strojnik "incompetently represent[s] clients" and "should not be practicing law".

24   Likewise, Email 2 (which even has the subject line "Lawsuit") talks only about the

25   pending lawsuit between RCS and DCR.

26   It is hard to imagine how it could be claimed that these emails did not have at least

27   "some relation" to the Arizona Lawsuit.  *See Bailey*, 130 Ariz. at 368, 636 P.2d at 146 ("If

28   the party [to the pending litigation] is made the subject of a suit for defamation, all doubts

1     as to the relevancy should be resolved in his favor.").  Arizona courts have repeatedly held

2     that the absolute litigation privilege bars claims for defamation based on statements that

3     were less directly related to pending litigation than those at issue here.  *See, e.g.*, *Hall*, 214

4     Ariz. at 316, 152 P.3d at 1199 (former employee's letter sent to the parent company of his

5     former employer, which he had sued); *Yeung*, 224 Ariz. at 504, 232 P.2d at 1286 (report

6     of expert witness in arbitration); *Bailey*, 130 Ariz. at 368-69, 636 P.2d at 147 (complaint

7     filed with Commission on Judicial Qualifications accusing justice of the peace of sexual

8     promiscuity); *World Res. Co. v. Roosevelt Irrigation Dist.*, No. 1 CA-CV 10-0868, 2012

9     WL 4847033, at *6 (Ariz. Ct. App. Oct. 11, 2012) (draft complaint for a possible future

10    environmental litigation and related materials provided to over 100 potentially liable

11    parties at an informal meeting).  Although the recipient of the communication needs to

12    "have some relationship to the proceeding" (*Hall*, 214 Ariz. at 313, 152 P.3d at 1196), that

13    requirement is clearly met here since Alex Callan is the manager of RCS.

14            Mr. Strojnik may attempt to argue that only the portions of Email 1 in which Ms.

15    Pereira criticized his performance and skills as an attorney, and referred to the prior

16    disciplinary orders against him in Arizona, should be viewed in isolation, and that those

17    particular passages are not privileged because they are not directly relevant to the

18    substance of the legal claims asserted in the Arizona Lawsuit.  But the proper question is

19    *not* whether the alleged defamatory statement is "strictly relevant" to the substantive

20    claims alleged in the pending litigation.  Rather, the litigation privilege will apply so long

21    as "the defamatory statements have some relation to the *judicial proceedings*" when

22    viewed in the context in which they were made.  *See Bailey*, 130 Ariz. at 368, 636 P.2d at

23    146 (emphasis added).  Ms. Pereira's assertions that Mr. Strojnik "incompetently

24    represent[s] clients" and has been disciplined by the state bar on several occasions were

25    clearly made in furtherance of DCR's interests in the Arizona Lawsuit.  Those statements

26    were part of an attempt to convince the opposing party in the litigation (RCS) and its

27    counsel that there was no justification for Mr. Strojnik's flawed strategy of filing a lawsuit

28    rather than commencing an arbitration as required by the contract, and that if the lawsuit is

not voluntarily dismissed, then RCS and Mr. Strojnik may be subject to sanctions for misconduct (as Mr. Strojnik has been in the past). As such, those comments had at least "some relation" to the Arizona Lawsuit and are absolutely privileged.[4]

A similar situation was addressed in *Ashton-Blair v. Merrill*, 187 Ariz. 315, 928 P.2d 1244 (Ct. App. 1996). In that case, an individual (Ashton-Blair) had filed a complaint with the Arizona State Bar against his former attorney (Merrill). In a letter responding to the bar complaint, Merrill denied any wrongdoing and then speculated that Ashton-Blair's complaint against him was motivated by Ashton-Blair's own wrongful and possibly illegal conduct. *Id.* at 317, 928 P.2d at 1246. Ashton-Blair then sued Merrill for defamation based on the content of that letter. The court explained that Merrill's accusations against Ashton-Blair in the response letter, although unrelated to the substance of the bar complaint asserted against Merrill, still did "bear some relationship" to the bar complaint proceedings against him for purposes of triggering the litigation privilege because they "addressed a possible motive or bias on Ashton-Blair's part" for having filed the bar complaint. *Id.* The court held that the absolute litigation privilege applied to the bar complaint *and also* to the unrelated accusations against Ashton-Blair that were made by Merrill in the letter he sent in response to the bar complaint. *Id.* at 318, 928 P.2d at 1247. Similarly, in this case, the absolute litigation privilege applies to

---

[4] *Green Acres* also suggested that when evaluating the litigation privilege, courts should consider whether the statements at issue were "'made in furtherance of the litigation and to promote the interest of justice.'" 141 Ariz. at 613-14, 688 P.2d at 621-22 (*quoting Bradley v. Hartford Accident & Indem. Co.*, 30 Cal. App. 3d 818, 816 (1973)). As discussed above, Ms. Pereira's comments were in furtherance of DCR's interests in the Arizona Lawsuit since they were an attempt to convince RCS and its counsel to voluntarily dismiss the action. In addition, they promoted the interest of justice for DCR by seeking to enforce DCR's clear contractual right to have any disputes with RCS resolved in a confidential arbitration. Further, at least one Arizona court has noted that the California Court of Appeals case quoted in *Green Acres* as the basis of the "interest of justice" factor was later expressly disapproved by the California Supreme Court, which reasoned that the test improperly undercut the privilege since it could be argued that any allegedly tortious statement is contrary to "the interest of justice." *See Johnson v. McDonald*, 197 Ariz. 155, 158 n.1, 3 P.3d 1075, 1078 n.1 (Ct. App. 1999) (*citing Silberg v. Anderson*, 50 Cal. 3d 205 (1990)). Of course, *Green Acres* also held that the litigation privilege is "absolute" and applies regardless of "the speaker's motive, purpose or reasonableness in uttering a false statement." 141 Ariz. at 613, 688 P.2d at 621.

1    comments directly addressing the Arizona Lawsuits, but it also applies to any comments

2    that address a possible "motive or bias" for Mr. Strojnik's conduct in filing the Arizona

3    Litigation despite the Agreement's arbitration clause.

4    In addition, the *Ashton-Blair* court emphasized that "the public policy of the state

5    also leads us to conclude that an absolute privilege applie[s]" to any communications

6    made "[i]n the context of regulating attorneys' conduct" "to encourage reporting of

7    perceived unethical conduct by eliminating the fear of a defamation suit."  187 Ariz. 317-

8    18, 928 P.2d 1246-47.  Ms. Pereira's statements in Email 1 that she "will be making the

9    appropriate complaint with the Arizona state bar" that Mr. Strojnik is "still not fit to

10   practice law," and her related references to Mr. Strojnik's prior disciplinary problems with

11   the State Bar, is therefore absolutely privileged from defamation claims because it relates

12   to *both* the Arizona Lawsuit *and* a possible bar complaint against Mr. Strojnik.[5]  In either

13   case the absolute privilege applies and the Complaint must be dismissed.

14   **II.    THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE ALL OF THE ALLEGED WRONGFUL STATEMENTS EITHER WERE NOT ASSERTIONS OF OBJECTIVE FACT CAPABLE OF BEING PROVED TRUE OR FALSE, OR WERE SUBSTANTIALLY TRUE.**

15

16

17   Even if the Complaint were not subject to dismissal based on the absolute litigation

18   privilege (which it certainly is), it would still fail to state a claim because all of the alleged

19   wrongful statements are either subjective statements of "pure opinion" incapable of being

20   proved true or false or are factual statements that are substantially true.

21   "[T]he threshold question in defamation suits" is "whether a reasonable factfinder

22   could conclude that the statement 'impl[ies] an assertion of objective fact.'"  *Unelko*

23   *Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (applying Arizona law) (*quoting*

24   *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).  If a statement does not imply an

---

25   ⁵    Further, since the official reporting, regulation and disclosure of attorney
26   misconduct and discipline has been identified as an area of strong public interest in which
     offending attorneys have no reasonable expectation of privacy, any statements referring to
     such matters also cannot support a claim for false light invasion of privacy.  *See*
27   *Godbehere*, 162 Ariz. at 343, 783 P.2d at 789 ("A number of jurisdictions take the
     position that because false light is a form of invasion of privacy, it must relate only to the
28   private affairs of the plaintiff and cannot involve matters of public interest.").

assertion of objective fact because it is one that is not "sufficiently factual to be susceptible of being proved true or false," then it is legally incapable of supporting a defamation claim. *Milkovich*, 497 U.S. at 21. *See also Turner v. Devlin*, 174 Ariz. 201, 207, 848 P.2d 286, 292 (1993) (en banc) (holding that in order to be actionable, the alleged wrongful statements "must be capable of being reasonably interpreted as stating actual facts" about the plaintiff). Such non-actionable statements that by their nature cannot be proved true or false are sometimes referred to as "pure opinion." *See Unelko*, 912 F.2d 1053 n.2; *Partington v. Bugliosi*, 56 F.3d 1147, 1153 & n.10 (9th Cir. 1995). Statements of this type that convey a person's "subjective impression" or "characterization" of an individual or event and that "have no bench mark with which to judge their accuracy," cannot be defamatory. *Turner*, 174 Ariz. at 207-208, 848 P.2d at 292-293 ("*Milkovich* made clear that First Amendment protection should not turn on such an intensely subjective evaluation"). "The Supreme Court and other courts have emphasized that one must analyze a statement in its broad context to determine whether it implies the assertion of an objective fact." *Partington*, 56 F.3d at 1153.

A common example of non-actionable subjective statements is "the sort of loose, figurative, or hyperbolic language" that would negate the impression that the writer was purporting to state actual facts about the plaintiff. *Milkovich*, 497 U.S. at 21. *See also Turner*, 174 Ariz. at 208, 848 P.2d at 293 (holding that defendant's characterization of plaintiff's behavior was "'no more than rhetorical hyperbole, a vigorous epithet' used to criticize [plaintiff's] behavior" and was thus incapable of being defamatory). Statements "cast in colorful, indeed hyperbolic, terms [are] precisely the type of rhetorical flourish that the First Amendment protects." *Partington*, 56 F.3d at 1160 ("rhetorical hyperbole" and "imaginative expression" are not actionable). As such, "'[t]he law provides no redress for harsh name-calling.'" *Ultimate Creations, Inc. v. McMahon*, 515 F. Supp. 2d 1060, 1065 (D. Ariz. 2007) (citation omitted).

**A.    Most Of Defendants' Alleged Wrongful Statements Are "Loose, Figurative, or Hyperbolic Language" and Subjective "Pure Opinions" That Are Not Susceptible of Being Proved True or False.**

Nearly all the content of the alleged defamatory emails are subjective "pure opinions" of Ms. Pereira conveying her assessment of Mr. Strojnik's performance and abilities as a lawyer that use figurative, hyperbolic language.[6] Ms. Pereira's statements that Mr. Strojnik drafted a "ridiculous complaint (which even a 1st year law student could have seen you did this all wrong)," that he "should not be practicing law if [he] so incompetently represent clients" and "obviously [is] still not fit to practice law" is the kind of "'rhetorical hyperbole [and] vigorous epithet' used to criticize [plaintiff's] behavior" that, as a matter of law, cannot be defamatory. *Turner*, 174 Ariz. at 208, 848 P.2d at 293.

The Ninth Circuit uses a three-part test to determine whether an allegedly defamatory statement implies an actionable assertion of objective fact:

> (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative of hyperbolic that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false.

*Partington*, 56 F.3d at 1153 (citing *Unelko*, 912 F.2d at 1053).  All three of these factors support the conclusion that the statements do not imply an assertion of objective fact.

### 1.    The circumstances and tenor of the emails negate any claim that Ms. Pereira was asserting objective, provable facts.

The circumstances and tenor of Ms. Pereira's emails are clear.  They were a direct response to Defendants' receipt of the complaint in the Arizona Lawsuit and a reaction to the unexplained decision by Strojnik and RCS to ignore the arbitration clause and instead file a lawsuit in an Arizona court.  They used hyperbolic rhetoric and vigorous epithet in an attempt to convince the opposing party in a pending litigation that their attorney's strategy was groundless and that there was serious reason to doubt Mr. Strojnik's advice that is was proper to continue the litigation instead of arbitrating.  *See Unelko*, 912 F.2d at 1053-54 ("As this circuit has long recognized, there are certain 'circumstances in which

---

[6]    The only exception is the passage from Email 1 in which Ms. Pereira stated that Mr. Strojnik was "currently on probation after numerous suspensions with the state bar association (which followed client complaints for misconduct and malpractice)," which could be deemed a statement of objective fact.  However, as shown below, this statement about Mr. Strojnik's disciplinary history was substantially true when it was made.

an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole'") (citation omitted).

### 2. Ms. Pereira was merely offering her personal interpretation of truthful, available facts using figurative and hyperbolic language.

Ms. Pereira's use of colorful phrasing and rhetoric (such as "even a 1st year law student could have seen you did this all wrong" and "you obviously are still not fit to practice law") strongly suggests that the statements were not purporting to be statements of objective fact. After all, there is no objective bench mark against which one can measure whether a lawyer is more skilled than a "1st year law student" or is generally "incompetent." *See Turner*, 174 Ariz. at 207, 848 P.2d at 292 (rejecting defamation claim based on statement of plaintiff's "subjective impression" that the defendant's prior conduct was "rude and disrespectful" and "bordered on police brutality" because plaintiff's comments "have no bench mark with which to judge their accuracy"). Further, Ms. Pereira disclosed the truthful, non-defamatory facts upon which she was basing her personal assessment of Mr. Strojnik's performance as an attorney—namely, the fact that he had filed a lawsuit in Arizona despite the Agreement's clear arbitration clause, and his prior disciplinary history with the Arizona State Bar—enabling others to draw their own conclusions about the validity of her opinion based on those facts. *See Lewis v. Time Inc.*, 710 F.2d 549, 556 (9th Cir. 1983) (finding that when the facts on which an opinion is based "are true, and when they are stated, the first amendment shields from liability an opinion that arises from them").

### 3. The statements assessing Mr. Strojnik's performance as a lawyer are not susceptible of being proved true or false.

Ms. Pereira's negative statements characterizing and criticizing Mr. Strojnik's performance and abilities as a lawyer were inherently subjective and thus cannot support claims for defamation or false light. *See Partington*, 56 F.3d at 1158 ("statements about a lawyer's performance constitute 'subjective' statements and are not susceptible of being proved true or false"). As the Ninth Circuit further explained in *Partington*,

1

> assessments of a lawyer's trial performance are inherently subjective and therefore not susceptible of being proved true or false. . . . There is no objective standard by which one can measure an advocate's abilities with any certitude or determine conclusively the truth or falsity of statements made regarding the quality of his or her performance.

2

3

4

5    *Id.* at 1157-58.[7]   The court went on to reject the plaintiff's false light claims for the same

6    reason.   *Id.* at 1160-61 ("We reject [plaintiff's] false light claims regarding the two

7    contested statements [criticizing an attorney's performance] . . . for the same reason that

8    we rejected his defamation claims based on those statements: both statements are

9    protected by the First Amendment, regardless of the form of tort alleged.").

10       **B.    The Only Statements by Defendants That Could Be Considered Statements of Objective Fact Were Substantially True.**

11

12            Documentation of Mr. Strojnik's disciplinary proceedings before the Arizona State

13    Bar and the Arizona Supreme Court are available as a matter of public record.   Thus, it

14    can be shown that all of the factual statements in the allegedly defamatory emails were

    substantially true and cannot support claims for defamation or false light.

15

16       **1.    Substantial truth is an absolute defense, and may be determined by the Court on a motion to dismiss.**

17    Substantial truth is an absolute defense to a claim for defamation.

18

> In a civil action for libel, the truth of the contents of the allegedly libelous statement is a complete defense.   Moreover, when proving the statement's truth, the defendant need not prove the literal truth of every detail, but must only prove that the statements are substantially true.   Substantial truth is an absolute defense to a defamation action in Arizona.   "Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication in justified."

19

20

21

22

23    *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939, 941 (1991)

24    (citations omitted) (en banc).   Further, "[w]hen the underlying facts are undisputed, the

25    determination of substantial truth is a matter for the court" (*id.*), and in making that

26    _____
       [7]   Likewise, in a defamation case based on statements that a lawyer was a "shady practitioner" based on judgments against him for malpractice and fraud, the Ninth Circuit held those statements non-actionable.   *Lewis*, 710 F.2d at 556.   *See also Turner*, 174 Ariz. at 207, 848 P.2d at 292 (Whether an "assessment [of plaintiff's conduct] is true or false is simply 'not the kind of empirical question a factfinder can resolve.'" (citation omitted)).

27

28

1   determination on a motion to dismiss, the court "may take judicial notice of matters of

2   public record outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504

3   (9th Cir. 1986).  Finally, "'[w]here the question of truth or falsity is a close one, a court

4   should err on the side of nonactionability.'"  *Partington*, 56 F.3d at 1159.

5               **2.    Public records show that Ms. Pereira's factual statements
                       regarding Mr. Strojnik's history of attorney discipline were
6                      substantially true.**

7         Ms. Pereira's statement that Mr. Strojnik was "currently on probation after

8   numerous suspensions with the state bar association (which followed client complaints for

9   misconduct and malpractice)" was substantially true.  Accordingly, it cannot support a

10  defamation claim.  The basic facts of Mr. Strojnik's disciplinary proceedings before the

11  Arizona State Bar and the Arizona Supreme Court are documented as a matter of public

12  record.  Mr. Strojnik's disciplinary summary which is publicly available on the Arizona

13  State Bar's website (copy attached as <u>Exhibit A</u> to the Request For Judicial Notice

14  ("RJN")), shows that (i) he was censured in April 1990 based on one charge, (ii) he was

15  reprimanded in May 2011 based on two charges, (iii) he was placed on probation in May

16  2011 based on two charges, (iv) he was suspended in December 2011 based on one

17  charge, (v) he was reinstated from his suspension in January 2012, and (vi) his probation

18  was completed on September 19, 2013.  Descriptions of these orders and the issues they

19  addressed are publicly available on the State Bar's website and in the State Bar's Arizona

20  Attorney magazine (copies attached as <u>Exhibit B</u> to RJN (4/5/90 Censure),[8] <u>Exhibit C</u> to

21  RJN (5/2/11 Reprimand, and Probation),[9] and <u>Exhibit D</u> to RJN (12/3/11 Suspension).[10]

22  ───────────────

23  [8]  *See* <u>Exhibit B</u> to RJN, 86-0658 Disposition Summary, noting that Mr. Strojnik
     was censured "for conduct in violation of the rules of professional conduct" because when
24   faced with a conflict of interest among several clients whom he jointly represented, he
     withdrew from representing some of the clients but improperly continued to represent
     other clients who were adverse to them.

25  [9]  *See* <u>Exhibit C</u> to RJN, 09-0314 Disposition Summary, noting that Mr. Strojnik
     was reprimanded and placed on probation for two years for (i) representing a party against
26   a former client without the former client's appropriate consent, (ii) arranging the merger
     of his own corporation with his client's company without getting his client's informed
27   consent or advising the client to seek independent counsel, and (iii) engaging in conduct
     prejudicial to the administration of justice by negotiating with counsel for the withdrawal
28   of a pleading he filed based on the payment of his disputed fees.  Also, in a second matter,

Ms. Pereira's statement that Mr. Strojnik was "currently on probation" was indisputably true. In its November 7, 2011 order suspending Mr. Strojnik from practice, the Supreme Court also extended the period of his probation (which was already in effect) until September 20, 2013. *See* Exhibit D to RJN ("Mr. Strojnik will continue on probation . . . for two years from September 20, 2011"). Thus, on August 28, 2013, when Email 1 was sent, Mr. Strojnik was in fact still on probation.

Ms. Pereira's statement that Mr. Strojnik had been subject to "numerous suspensions with the state bar association (which followed client complaints for misconduct and malpractice)" is also substantially true. As the public records show, Mr. Strojnik has been formally disciplined by the State Bar no less than four times on four separate "charges." At least one of those disciplinary orders was described as a "suspension," while the other three orders were described as "censure," "reprimand," and "probation." Although it may not have been technically correct that there was more than one formal order labeled as a "suspension," there were three other orders of attorney discipline addressing Mr. Strojnik's misconduct as an attorney. The "gist" or "sting" of Ms. Pereira's comment would have been substantially the same if she had instead written that Mr. Strojnik had been subject to several disciplinary orders including censure, reprimand, probation, and suspension. *See Read*, 169 Ariz. at 355, 819 P.2d at 941 ("The defendant need not prove the literal truth of every detail . . . . 'Slight inaccuracies will not

---

Mr. Strojnik created conflicts of interest by filing suit against persons whom he represented by being general counsel for a joint venture and by filing suit on a matter directly arising from an amended joint venture that he prepared. He amended the joint venture, in part, in order to waive claims other joint venture members may have had against him and his wife and his status as lawyer for the joint venture allowed him to obtain confidential information about joint venture members, which he then used to their disadvantage by filing a lawsuit against them.

[10] *See* Exhibit D to RJN, 10-1223 Disposition Summary, noting that Mr. Strojnik was suspended for 30 days and had his existing probation extended for two years from September 20, 2011 for (i) sending a letter to a represented person that had no purpose other than to embarrass, delay, or burden him, and resulted in the filing of a motion to remove Mr. Strojnik as counsel, (ii) filing a motion to compel and for sanctions and a complaint for declaratory judgment, both of which were frivolous and prejudicial to the administration of justice, (iii) his treatment of a deponent during a deposition which was "insulting and shockingly insensitive," and (iv) advising his client to not attend an IME, without advising her that she could be sanctioned for not attending (and she was).

1    prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the

2    publication in justified'") (citation omitted) (holding that a statement that plaintiff had

3    been jailed "when he fired a gun after a motorist accidentally leaned on her horn" was

4    substantially true, even though plaintiff was only jailed for "displaying a weapon").

5         Copies of the complaints sent to the State Bar in connection with these disciplinary

6    proceedings (which are also publically available upon request from the State Bar) confirm

7    that Mr. Strojnik's numerous instances of attorney discipline were initiated, at least in

8    part, by complaints from his clients. *See, e.g.*, State Bar attorney complaint filed by Ron

9    Deen and Sr., Jack San Felice asking "[t]o have Mr. Strojnik removed from the current

10   litigation he is improperly and unethically pursuing against us, and for the State Bar to

11   impose proper sanctions for his misconduct and unethical legal representation," and

12   marking "yes" when the form asked "[w]as or is this lawyer your lawyer?" (copy attached

13   as Exhibit E to RJN).  As a result, Ms. Pereira's statement that those disciplinary orders

14   "followed client complaints for misconduct and malpractice" was also substantially true.[11]

15        Finally, because these factual statements were all substantially true, neither these

16   statements nor Ms. Pereira's assertions of "pure opinion" about Mr. Strojnik's abilities as

17   a lawyer communicated any "false information or innuendo" or "information [that] creates

18   a false implication" about Mr. Strojnik as would be required to state a claim for false light

19   invasion of privacy. *See Godbehere*, 162 Ariz. at 340-41, 783 P.2d at 786-87.[12]

20                                    **Relief Requested**

21        For the foregoing reasons, Defendants respectfully request that the Complaint be

22   dismissed with prejudice in its entirety.

23

24   _____

     [11]  *See* BLACK'S LAW DICTIONARY at 662 (6th ed. 1991) (defining "malpractice" as
25   "[p]rofessional misconduct or unreasonable lack of skill"); *Elliott v. Videan*, 164 Ariz.
     113, 116, 791 P.2d 639, 642 (Ct. App. 1989) (noting that violation of attorney Rules of
     Professional Conduct is evidence of malpractice).

26   [12]  *See also Partington*, 56 F.3d at 1161 (rejecting false light claim based on a
27   defendant's critical assessment of a lawyer's performance that implied the lawyer
     represented his client poorly, when the only facts asserted were non-defamatory and the
28   implication suggested by defendant's assessment puts plaintiff in "precisely the light in
     which he has already been put by material that is protected by the First Amendment").

1

2

October 15, 2013                            **PERKINS COIE** LLP

3

4                                         By: s/ Brian C. Lake
                                              Brian C. Lake
                                              2901 N. Central Avenue, Suite 2000
                                              Phoenix, AZ  85012-2788
5

6                                         Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3      ☒      I hereby certify that on October 15, 2013, I electronically transmitted the

4      attached documents to the Clerk's Office using the CM/ECF System for filing and to the

5      following counsel of record:

6                              Peter Strojnik
                              STROJNIK, P.C.
7                              ps@strojnik.com

8

9      ☒      I hereby certify that on October 15, 2013, I served the attached document by

10     first class mail on the Honorable David K. Duncan, United States District Court of

11     Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

12

13                              s/ S. Neilson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28