Peter Strojnik, 6464
**STROJNIK, P.C.**
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRIT OF ARIZONA

| | | |
|---|---|---|
| PETER STROJNIK | ) | NO. 2:13-CV-02032-PHX-DKD |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| vs. | ) | **COMPLAINT** |
| | ) | |
| JOSEPHINE PEREIRA, a natural person; DCR STRATEGIES, INC. | ) | (Oral Argument Requested) |
| Defendants. | ) | |

Plaintiff respectfully responds to Defendants' Motion to Dismiss as more fully supported in the following Summary and Memorandum of Points and Authorities that are by this reference incorporated herein.

### SUMMARY

Plaintiff is a well-respected Phoenix attorney of 33 years. In a related case[1], Defendant Pereira published a communication directly to Plaintiff's clients stating that Plaintiff is "incompetent", "unethical" and "unfit to practice law". These statements

---

[1] Reference is made to the proceeding in the Maricopa County Superior Court further addressed below.

were "intended to create a wedge between Plaintiff and his client by mounting a false personal attack on Plaintiff without justification or excuse". Complaint at ¶22. Indeed, these defamatory statements were "intended to cause harm". *Id.* at ¶ 23.

Defendants assert that these statements are privileged because they have "*some relation to the judicial proceeding*", see Motion at 6:11-12. (emphasis in original). Defendant's analysis, however, is incomplete. Defendants omit the second prong of the judicial immunity test which states, *"for the privilege to apply, the defamatory statement must "be made in furtherance of litigation and to promote the interests of justice…Without this nexus, the defamation serves only to injure reputation." Green Acres Trust v. London*, 141 Ariz. 609, 613-14, 688 P.2d 617, 621-22 (1984)

Where, as here, the attorney makes gratuitous defamatory statements that do not advance the litigation nor promote the interests of justice, liability lies. *See, e.g. Recorp Partners v. Gust Rosenfeld, PLC*, infra. See also *Sussman v. Damian*, 355 So.2d 809, 812 (Fla.App.1977) (attorney's defamatory attack on opposing counsel's integrity, made in the courthouse elevator after heated motion argument, was unrelated to cause at hand and therefore was not absolutely privileged); *Cummings v. Kirby*, 216 Neb. 314, 343 N.W.2d 747 (1984); *Viss v. Calligan*, 91 Wash. 673, 675-76, 158 P. 1012 (1916) (no privilege for witness who "'broke out' during the course of his testimony and proceeded to defame the [defamation plaintiff]" with allegations irrelevant to the proceeding).

Ms. Pereira's defamatory statements relating to Plaintiff's competence, ethics and fitness to practice law served *only* to injure reputation and *not to further the interests of any litigation* or to *promote interest of justice*; in fact, these defamatory statements were "intended to create a wedge between Plaintiff and his client by mounting a false personal attack on Plaintiff without justification or excuse". Complaint at ¶ 22.

Defendants also argue that Ms. Pereira's defamation contains only "pure opinion". Statements that Plaintiff is "incompetent", "unethical" and "unfit to practice law" are rather clear on their face. They are defamatory per se. See *Modia v. Parker*, 17 Ariz. App. 54, 495 P.2d 494 (1972) (Defamation which concerns one in his profession, trade or business is defamation per se.)

Lastly, Defendants then assert the defense of "truth". Obviously, the statements that Plaintiff is "incompetent", "unethical" and "unfit to practice law" are not true. Plaintiff is a respected member of the Arizona State Bar for 33 years and, according to the State Bar, well competent and fit to practice law.

## MEMORANDUM OF POINTS AND AUTHORITIES

**1. BACKGROUND**

Defendant DCR Strategies, Inc. ("DCR") is in the business of selling pre-paid credit cards. Defendant Pereira is a New York lawyer holding herself out as DCR's business development counsel. DCR sold pre-paid credit cards to Plaintiff's client, Reward Card Solutions, LLC ("RCS"). RCS paid DCR in full for the credit cards. After

RCS distributed the preloaded credit cards to its customers, DCR surreptitiously debited a total of $165,612.50 from the cards.  In addition, RCS paid DCR $324,115.92 in prepaid trust deposits which DCR failed to return. RCS, represented by Plaintiff, sued DCR for breach of contract seeking damages in the amount of $489,728.42, Maricopa County Superior Court CV 2013-011504.  Complaint at ¶ 5.

Upon service of process, Defendant Pereira called Plaintiff while Paintiff was vacationing with his wife in California. Complaint at ¶6.  Defendant Pereira declared that Maricopa County did not have jurisdiction over the dispute and that the proper venue was in Canada. *Id.* at ¶7. Plaintiff advised that he was traveling and did not have the file in front of him to discuss the matter. *Id.* at ¶8. Plaintiff requested that Defendant Pereira "send him an e-mail with Defendant Pereira's jurisdictional analysis so the parties could discuss the matter upon Plaintiff's return from vacation". *Id.* at ¶9. Defendant Pereira, unprovoked, then accused Plaintiff of incompetence and lack of ethics. Defendant Pereira's abusive, unwarranted ad hominem attack left Plaintiff no choice but to terminate the abusive conversation. *Id.* at ¶¶ 10, 11. Defendant Pereira called Plaintiff back at moments later and again engaged in a completely unnecessary tirade and threats against Plaintiff, accusing him of incompetence and lack of ethics. Defendant Pereira's then abruptly hung up. *Id.* at 11.

Instead of providing Plaintiff with a jurisdictional analysis as requested[2], or an apology (which would have put the matter to rest), Defendant Pereira published two e-mails to Plaintiff and Plaintiff's client in which she stated that Plaintiff is "incompetent", "unethical", less capable than "a 1st year law student", had committed "malpractice", had been subjected to "numerous suspensions" and is "unfit to practice law". See Exhibit 1 to the Complaint:

> Peter:
> Since you hung up the phone on me, there will be **no** resolution to this matter and I will have our firm move to dismiss your ridiculous complaint (which even a 1st year law student could have seen you did this all wrong) and force your client to arbitrate this matter in Canada as per the contract. Honestly, you should not be practicing law if you so incompetently represent clients.
>
> I must say, that for an attorney currently on probation after numerous suspensions with the state bar association (which followed client complaints for misconduct and malpractice), you would tread more carefully. I will be making the appropriate complaint with the Arizona state bar today since you obviously are still not fit to practice law.
>
> We will now not be settling any matter with your client and will move to dismiss this frivolous action as well as request sanctions against you from the court.

---

[2] Notably, jurisdictional analysis would have disclosed to Defendant Pereira that the Prepaid Card Agreement (which was prepared by DCR) does not contain a choice of forum/venue clause. The Agreement provides that "the laws of the Province of Ontario **and** [sic] the laws of the State of California shall govern this agreement". See Agreement at ¶ 10.2. The Agreement further provides that "[a]ny dispute or claim arising out of or in connection with this Agreement shall be settled by arbitration pursuant to the Ontario Arbitration Act, R.S.O. 1991, c.17. Agreement at ¶10.3. In other words, the Agreement provides for arbitration pursuant to the Ontario Arbitration Act to be administered according to the laws of California in the State of Arizona.

## 2. JUDICIAL PRIVILEGE DOES NOT APPLY TO MS. PEREIRA'S GRATUITOUS DEFAMATORY PUBLICATION TO PLAINTIFF'S CLIENT

*Green Acres*, supra, considered whether the attorneys were covered by the absolute privilege given participants in judicial proceedings. The court explained that the privilege promotes "the fearless prosecution and defense of claims which lead to complete exposure of pertinent information for a tribunal's disposition" and protects judges, parties, lawyers, witnesses, and jurors. According to *Green Acres,* "to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding." The Supreme Court emphasized, however, that:

> … ***special emphasis must be laid on the requirement that it [statement] be made in furtherance of the litigation and to promote the interest of justice***. *Bradley v. Hartford Accident & Indemnity Co*., 30 Cal.App.3d 818, 826, 106 Cal.Rptr. 718, 723 (1973) (emphasis in original). ***Without that nexus, the defamation only serves to injure reputation***. (Additional Emphasis supplied.)

*Green Acres,* 141 Ariz. at 613-14, 688 P.2d at 621-22.

Arizona Courts have consistently applied the "furtherance of the litigation" standard in resolving privilege cases. See, e.g., *Johnson v. McDonald*, 197 Ariz. 155, 3 P.3d 1075 (Ariz. App., 1999); *Recorp Partners v. Gust Rosenfeld, PLC*, 198 Ariz. 230, 8 P.3d 418 (Ariz. App., 2000); *Safeway Ins. Co., Inc. v. Guerrero*, 207 Ariz. 82, 83 P.3d 560 (Ariz. App., 2004); *Tennenbaum v. Arizona City Sanitary District*, 2013 WL 2422684 (Dist. Arizona, 2013). Therefore, the question is whether the defamatory attack on Plaintiff was made "in furtherance of litigation" **and** whether the unprovoked

violence promoted "the interest of justice". Any person advancing the proposition that personal defamatory attacks on the opposing counsel *made to counsel's clients* "further the litigation" and "promote the interest of justice" is not well reasoned.

For example, in *Recorp Partners v. Gust Rosenfeld,* supra, the Arizona court of appeals held that the concepts of "related to" and "in furtherance of the litigation" must be considered separately. In *Recorp*, Gust Rosenfeld represented two limited partners in a litigation against the general partner, Recorp. The attorneys issued numerous letters to the non-represented limited partners urging them to remove Recorp as the general partner. The communications contained allegedly defamatory statement and Recorp filed suit. The trial court granted Gust Rosenfeld immunity, but the court of appeals reversed, stating:

> In May, 1998, Eggleston and Harris distributed by mail and/or telephone, a memorandum prepared by Barton entitled "Why Do We Need a New General Partner?" to all of the limited partners in the Partnership. The memo explained that the hearing to have Recorp removed as general partner was delayed and requested that the limited partners act to remove Recorp pursuant to the partnership's official procedures. The memo then listed a number of reasons for this request, which Appellants contend are defamatory. Regardless of whether each statement, taken individually, might "bear some relation" to the pending litigation, the statements, as distributed in the memo, were not made "in furtherance of" the litigation. Rather, as the title suggested, they were made for the express purpose of encouraging the limited partners to take action outside the lawsuit. Therefore, the statements were not subject to the absolute privilege, and the trial court erred in dismissing the proceedings as to this document.

*Recorp,* 198 Ariz. at 237, 8 P.3d at 425, As in *Recorp* where the defamatory statements were made to promote a removal of the general partner, the defamatory

statements  Defendant Pereira's defamatory statements were not made "in furtherance of litigation" or to otherwise "promote the interests of justice". To the contrary, Defendant Pereira's defamatory statements were made in order to drive a wedge between Plaintiff and his clients. *See* Complaint at ¶22[3].

Moreover, the defamatory statements here do not "relate to" the litigation. A lawyer's competence, ethics and fitness to practice law are utterly devoid of any relation to the litigation. How does a statement to the client that his lawyer is "incompetent" relate to the contract claim in the related litigation? How does the statement to the client that his lawyer is "unethical" relate to the prepaid card agreement? How does the statement to the client that his lawyer is "unfit to practice law" relate to debiting prepaid credit cards or refusing to refund prepaid trust deposits?

---

[3] See also *Sierra Madre Dev. Inc. v. Via Entrada Townhouses Ass'n*, 20 Ariz. App. 550, 554, 514 P.2d 503, 507 (1973), is illustrative regarding this principle. The Court in Sierra noted that the judicial privilege is not unlimited:

> We note that the privilege is not unlimited. Defamatory statements which are *clearly unconnected with the subject of inquiry* or which state a totally frivolous claim or defense are not accorded to the privilege.

*Id.* (emphasis added). Simply stated, there must be some connection between the defamatory statement and the "subject of inquiry." The subject of inquiry in the companion case is whether DCR absconded with 489,728.42 of RCS' dollars. RCS's lawyers' competency, ethics or fitness to practice law are "clearly unconnected" with this inquiry. *See also Sobul v. Alarcon,* 131 P.3d 487 (Ariz.App.2006) ("Because absolute immunity immunizes absolutely, it is reserved for 'those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives'") (*quoting Burns v. Davis*, 993 P.2d 1119 (Ariz.App. 1999)).

These questions were answered in the Florida case *Sussman v. Damian*, 355 So.2d 809 (Dist. Fl. 1977). There, plaintiff and defendant, both attorneys, represented adverse parties in a civil action. The alleged defamation resulted from an argument between the parties in a courthouse elevator. The court summarized the argument as follows: "defendant Damian exploded in the elevator with a *strong personal attack* on Sussman's *professional integrity* accusing Sussman of *improprieties in the handling of client monies and trust funds unrelated to the subject matter of the lawsuit* which up to that point was being discussed during their conversation and expressing a desire to see Sussman disbarred." Id. at 811.

In *Sussman*, the court held that the above-referenced statements were not absolutely privileged. The Court explained that, although the defamatory statement was uttered during the course of an otherwise privileged conversation with opposing counsel, it was in no sense relevant or material to the cause at hand.

The defamation in *Sussman* is nearly identical to the statements contained in Ms. Pereira's e-mail. Both Damian and Ms. Pereira made "strong personal attacks" on the character of their adversary. Both did so vis-a-vis allegations of improprieties that were completely unrelated to the pending matters. Finally, similar to Mr. Damian in the *Sussman* matter, Ms. Pereira finished her defamatory e-mail with a threat to seek disciplinary measures from the state bar.

The fact that the defamation was written in an otherwise privileged e-mail is of no moment. As made clear by the Court in *Sussman*, statements that are irrelevant to pending litigation are not subject to the absolute privilege, regardless of whether they are uttered during the course of an otherwise privileged communication. *Sussman*, 355 So.2d at 809 (noting that although a statement was uttered during an otherwise privileged conversation, "the defamatory statement was in no sense relevant or material to the cause at hand. As such, it cannot come within the umbrella of an absolute privilege"). Accordingly, the mere fact that Ms. Pereira's e-mail references the underlying litigation is insufficient to bring the unrelated defamatory statements within the "umbrella" of privilege.

Decisions from other jurisdictions support this conclusion. A representative sample of these cases is collected in the footnote[4].

---

[4] In *Dachowitz v. Kranis,* 61 A.D.2d 782, 401 N.Y.S. 844 (2nd Dept. 1978) the attorney alleged that one of the plaintiffs had been convicted of crimes in Federal and State Courts. This allegation formed the basis for plaintiffs' subsequent libel suit. The attorney moved to dismiss, arguing that the allegations regarding plaintiff's criminal history were relevant in his suit for legal fees because they were made to impeach plaintiff's credibility.

The New York Court disagreed. In holding that the absolute judicial privilege did not apply to the attorney's allegations, the court held that the attorney's allegations "added nothing" to the issue before the court. The record in *Dachowitz* was "devoid of any grounds, either reasonable, unreasonable, mistaken, imaginary, or even feigned" on which it could be concluded that the defamatory statements were pertinent to the underlying litigation. Id.; *see also* <u>Viss v. Calligan</u>, 158 P. 1012 (Wash. 1916) (although statements made in court, even if falsely imputing crimes to another, are "not actionable if they are applicable and pertinent to the subject of inquiry," defendant's accusations of plaintiffs criminality, theft, destroying his ranch, and killing all of his cattle were not related to issue of money owed in connection with employment/tenancy relationship).

### 3. Ms. Pereira's Gratuitous Defamatory Publication to Plaintiff's Client is not "Pure Opinion"; It is, Instead, a Direct Accusation of Incompetent and Unethical Behavior.

As indicated in the Summary, Defendant Pereira's argument that her defamatory statements directed at Plaintiff's client are merely an expression of her "opinion" is not well taken. Statements that Plaintiff is "incompetent", "unethical" and "unfit to practice law" are rather clear on their face. They are defamatory per se. See *Modia v. Parker*, 17 Ariz. App. 54, 495 P.2d 494 (1972) (Defamation which concerns one in his profession, trade or business is defamation per se.)

### 4. Ms. Pereira's Gratuitous Defamatory Publication to Plaintiff's Client is not True

Lastly, Defendant Pereira argues that her defamatory statements are true. In (stated) support for this argument, Defendant Pereira submits to the Court Plaintiff's

---

Similarly, *Freeman v. Cooper,* 414 So.2d 355 (Louis. 1982) involved an action arising from allegedly defamatory statements made in a brief attendant to earlier domestic proceedings. The plaintiff, an attorney, represented defendant's wife in the earlier domestic proceedings. The defendant (who was also an attorney) represented himself. In the course of the domestic proceedings, defendant filed a memorandum accusing plaintiff of lying and acting surreptitiously with the intent to take advantage of a recently inducted judge. The memorandum further accused plaintiff and his client together of acting "above and beyond the law," thus "clearly importing that plaintiff and his client acted in concert to place allegations before the court which were known to be untrue." The plaintiff attorney sued for defamation, and the defendant argued that the memorandum was covered by judicial privilege.

The Court disagreed. In holding that defendant's allegations were not privileged, the Court noted: "defendant's assertions of plaintiff's surreptitious actions and plaintiff's perception of being above the law, while describing defendant's characterization of plaintiff's behavior which occurred in the course of the proceedings, really had nothing to do with the merits of any issue in the litigation." *Freeman*, 414 So.2d at 359.

State Bar Record. The record clearly notes that Plaintiff is a member in good standing and, according to the State Bar, not incompetent or unfit to practice law.

## CONCLUSION AND PRAYER FOR RELIEF

For these reasons, Plaintiff requests that Defendant Pereira's Motion to Dismiss should be denied in its entirety. Since

RESPECTFULLY SUBMITTED this 21st day of October, 2013.

**STROJNIK, P.C.**

/s/
_____
By: Peter Strojnik
Attorney for Plaintiff