1  Brian C. Lake, Bar No. 020543
   PERKINS COIE LLP
2  2901 N. Central Avenue, Suite 2000
   Phoenix, AZ  85012-2788
3  Telephone:  602.351.8000
   Facsimile:  602.648.7000
4  BLake@perkinscoie.com

5  Attorneys for Defendants

6

                    UNITED STATES DISTRICT COURT
7
                          DISTRICT OF ARIZONA
8

9  Peter Strojnik,                          No. CV2013-02032-PHX-SRB

10                Plaintiff,
                                            **DEFENDANTS' REPLY**
11     v.                                   **MEMORANDUM IN SUPPORT**
                                            **OF MOTION TO DISMISS**
12 Josephine Pereira, a natural person; DCR
   Strategies, Inc.,                        **Oral Argument Requested**
13
                  Defendants.
14

15

16         Defendants Josephine Pereira and DCR Strategies, Inc. ("DCR") file this Reply

17  Memorandum in Support of Defendants' Motion to Dismiss ("Motion").

18         Plaintiff Peter Strojnik unpersuasively attempts to argue that statements sent by

19  Ms. Pereira in two emails with subject lines reading "RCS v. DCR" and "Lawsuit"

20  somehow have no relation to the Arizona Lawsuit between Reward Card Solutions, LLC

21  ("RCS") and DCR.  Equally unavailing is Plaintiff's claim that Ms. Pereira's comments—

22  part of an obvious attempt to convince the opposing party in the underlying litigation,

23  RCS, and its counsel, Plaintiff, that there was no justification for Mr. Strojnik's flawed

24  strategy of filing a lawsuit against DCR rather than commencing mandatory arbitration—

25  were not made in furtherance of litigation or to promote the interest of justice.  Next,

26  Plaintiff's argument that Ms. Pereira's assessments of his performance and abilities as a

27  lawyer "are rather clear on their face" to be defamatory per se and must therefore be

28  statements of fact capable of being proved true or false is devoid of any legal analysis and

should be rejected by the Court.  Finally, Plaintiff appears to concede that Ms. Pereira's statement regarding Mr. Strojnik's history of attorney discipline was true when it was made. And if Plaintiff is implying that Ms. Pereira's statements regarding his competence as a lawyer must be factually untrue merely because he is still licensed to practice law in Arizona, that argument defies basic reasoning and logic.  For the reasons set forth in Defendants' Motion, the Complaint should be dismissed in its entirety.

### Factual Background

Throughout his Response, Plaintiff repeatedly and incorrectly claims that Ms. Pereira stated that Mr. Strojnik was "unethical." [Doc. 7, at 1, 3, 5, 8, & 11]  In order to correct this misrepresentation, and re-emphasize the weak factual basis of Plaintiff's claims, Defendant will again reproduce the content of the two relevant emails.  First, on August 28, 2013, Ms. Pereira sent an email to Mr. Strojnik with a "cc:" to Alex Callan, the manager of RCS, and with a subject line that read "RCS v. DCR" ("Email 1"):

> Peter:
>
> Since you hung up the phone on me, there will be **no** resolution to this matter and I will have our firm move to dismiss your ridiculous complaint (which even a 1st year law student could have seen you did this all wrong) and force your client to arbitrate this matter in Canada as per the contract. Honestly, you should not be practicing law if you so incompetently represent clients.
>
> I must say, that for an attorney currently on probation after numerous suspensions with the state bar association (which followed client complaints for misconduct and malpractice), you would tread more carefully. I will be making the appropriate complaint with the Arizona state bar today since you obviously are still not fit to practice law.
>
> We will now not be settling any matter with your client and will move to dismiss this frivolous action as well as request sanctions against you from the court.

[Email 1, Doc. 1-1 at 16]  Later that same day, Ms. Pereira, while intending to send another email to "Peter Strojnik," mistakenly sent an email to an individual named "Peter Tuovi" (a member of DCR's board of directors, who is also an attorney) with a "cc:" to RCS's manager Alex Callan, and with a subject line that read "Lawsuit" ("Email 2"). That email states:

And so you know, our firm is making a limited appearance to dismiss, meaning you cannot confer personal jurisdiction over DCR in such a matter. If you happen to have gotten a judgment against DCR, you know it would be worthless based on Full Faith and Credit, so good luck. You really screwed this one up because you cannot take constructive criticism over what is a defective lawsuit.

[Email 2, Doc. 1-1 at 18].   These two emails contain the only statements on which Plaintiff's defamation and false light claims can be based.

### Argument

**I.     THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE ALLEGEDLY WRONGFUL STATEMENTS ARE PROTECTED BY THE ABSOLUTE LITIGATION PRIVILEGE AS HAVING "SOME RELATION" TO A PENDING LITIGATION BETWEEN THE PARTIES.**

The Arizona Supreme Court has held that an attorney "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.'"  *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984) (*quoting* Restatement (Second) of Torts § 586 cmt. c).   The court noted that the absolute privilege must apply broadly to all communication "relating to pending or proposed litigation" because "[t]he conduct of litigation requires more than in-court procedures" and an attorney "must not be hobbled by the fear of reprisal by actions for defamation." *Id*. at 616, 688 P.2d at 624 (citation omitted).  *See also Bailey v. Super. Ct.*, 130 Ariz. 366, 368, 636 P.2d 144, 146 (Ct. App. 1981) ("The defense of absolute privilege is available if the defamatory statements have some relation to the judicial proceedings, even though they may not constitute evidence relevant and material from a strictly legal evidentiary standpoint. . . . If the party [to the pending litigation] is made the subject of a suit for defamation, all doubts as to the relevancy should be resolved in his favor.") (emphasis added) (citations omitted).

Plaintiff cites to snippets of the alleged wrongful statements, urging the Court to read them in isolation and out of context.  But when the emails are viewed in their full

context—as they must be—it is clear that Ms. Pereira's comments do have "some relation" to the Arizona Lawsuit. Moreover, those statements were made in furtherance of resolving that litigation and to promote the interest of justice. Accordingly, the statements by Defendants are protected by the absolute litigation privilege and the Complaint should be dismissed with prejudice.

A.   **The Alleged Wrongful Statements All Had "Some Relation" to the Pending Litigation Between the Parties.**

Plaintiff argues that Ms. Pereira's statements were entirely unrelated to the Arizona Lawsuit. In support, Plaintiff cites to a thirty-six year old case from a state court in Florida applying Florida law, *Sussman v. Damian*, 355 So. 2d 809 (Fla. Ct. App. 1977). But in that case, the court explained that the defendant "exploded in the elevator with a strong personal attack on [plaintiff's] professional integrity accusing [plaintiff] of improprieties in the handling of client monies and trust funds *unrelated to the subject matter of the lawsuit* which up to that point was being discussed during their conversation . . . ." *Id.* at 810–11 (emphasis added). The Florida court concluded that such comments were not absolutely privileged because "the defamatory statement was in no sense relevant or material to the cause at hand." *Id.* at 812.[1]

Despite Plaintiff's claim that the conduct in the *Sussman* case was "nearly identical" to Ms. Pereira's statements, the situation here is very different—all of Ms. Pereira's statements related to the dispute and litigation between Defendants and RCS, whether the contract between them was subject to mandatory arbitration, and whether Mr. Strojnik was justified and competent in advising RCS that it was proper to file the lawsuit in Arizona despite the Agreement's arbitration clause. As such, the statements all relate to, bear on, or are connected with the Arizona Lawsuit. *See Green Acres*, 141 Ariz. at

---

[1] However, the *Sussman* court further concluded that although the statements were not absolutely privileged, "Damian had a qualified privilege to utter the statement made, which privilege as a matter of law was not overcome by proof of express malice." *Sussman*, 355 So.2d at 812. Likewise, even if the absolute privilege were not to apply here, which it clearly does, Defendants' statements would be protected under the qualified privilege.

613, 688 P.2d at 621.  Email 1 was sent by Ms. Pereira to RCS's manager, Alex Callan, and its lawyer, Mr. Strojnik, with a subject line that read "RCS v. DCR".  The email specifically refers to the "ridiculous complaint" filed by Mr. Strojnik on behalf of RCS and the fact that it inexplicably ignores the clear mandatory arbitration clause in the parties' Agreement.  Ms. Pereira then asserts her opinion that filing the "frivolous action" despite the arbitration clause shows that Mr. Strojnik "incompetently represent[s] clients" and "should not be practicing law."  Ms. Pereira's comment that "even a 1st year law student could have seen that you did this all wrong" is a direct reference to the complaint against DCR that Mr. Strojnik drafted and filed.  Likewise, Email 2 (with the subject line "Lawsuit") talks only about the "defective lawsuit" between RCS and DCR.

Furthermore, Ms. Pereira's indication that she planned to file a complaint with the state bar association because she believed Mr. Strojnik was not fit to practice law, was directly related to Mr. Strojnik's filing of the complaint against DCR, which Ms. Pereira referred to as a "frivolous action" in the very next sentence.[2]  Finally, Ms. Pereira's statements were also a reference to Mr. Strojnik's possible "motive or bias" in filing the Arizona Lawsuit against DCR despite the mandatory arbitration clause.  *See Ashton-Blair*, 187 Ariz. at 318, 928 P.2d at 1247 (explaining that accusations in a letter from an attorney responding to a former client's bar complaint, although unrelated to the substance of the underlying bar complaint, still did "bear some relationship" to the bar complaint proceedings for purposes of triggering the litigation privilege because they "addressed a possible motive or bias" on the former client's part for having filed the bar complaint against the attorney).  Plaintiff never contests this point in his Response.

---

[2] As explained in the Motion (Doc. 4 at 10 & n.5), absolute privilege also applies to any statements that relate to bar complaints against attorneys so as to help "regulat[e] attorneys' conduct" and "to encourage reporting of perceived unethical conduct by eliminating the fear of a defamation suit." *Ashton-Blair v. Merrill*, 187 Ariz. 315, 317-18, 928 P.2d 1244, 1246-47 (Ct. App. 1996).  Thus, even if this statement did not relate to the Arizona Litigation, it would still be covered by the absolute privilege by virtue of its relation to a proposed bar complaint against Mr. Strojnik.  Plaintiff's Response does not address this point.

1

2

**B.    The Alleged Wrongful Statements Were Made in Furtherance of Resolving the Arizona Lawsuit and Were Intended to Promote the Interest of Justice.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

When evaluating the litigation privilege, the *Green Acres* court also suggested that courts should consider whether the statements at issue were "'made in furtherance of the litigation and to promote the interest of justice.'"  141 Ariz. at 613–14, 688 P.2d at 621–22 (*quoting Bradley v. Hartford Accident & Indem. Co.*, 30 Cal. App. 3d 818, 816 (1973)).  Importantly, at least one Arizona court has already noted that the California Court of Appeals case quoted in *Green Acres* as the source of the "interest of justice" factor was later expressly disapproved by the California Supreme Court, which correctly reasoned that the test improperly undercut the privilege as it could be argued that any allegedly tortious statement is contrary to "the interest of justice."  *See Johnson v. McDonald*, 197 Ariz. 155, 158 n.1, 3 P.3d 1075, 1078 n.1 (Ct. App. 1999) (citing *Silberg v. Anderson*, 50 Cal. 3d 205 (1990)).  Thus, the continuing viability of this factor is at best questionable.  Further, the central component of the *Green Acres* decision was that the litigation privilege is "absolute" and applies regardless of "the speaker's motive, purpose or reasonableness in uttering a false statement."  141 Ariz. at 613, 688 P.2d at 621.[3]  Plaintiff argues that the alleged defamatory statements cannot "promote the interest of justice" because they are defamatory.  But as the more recent California Supreme Court decision noted, such a circular argument would eviscerate the absolute litigation privilege.  *See Silberg v. Anderson*, 50 Cal. 3d 205, 218, 786 P.2d 365, 373 (1990) ("[E]ndorsement of the 'interest of justice' requirement would be tantamount to the exclusion of *all* tortious publications from the privilege, because tortious conduct is invariably inimical to the 'interest of justice.'  Thus, the exception would subsume the rule.").

24

25

26

27

28

---

[3]  Indeed, one summary of the holding in *Green Acres* by the Arizona Court of Appeals seems to emphasize that the "made in furtherance" and "to promote the interest of justice language" is merely designed to underscore that the allegedly wrongful statements must be connected with the judicial proceeding.  *See Safeway Ins. Co., Inc., v. Guerrero*, 207 Ariz. 82, 88, 83 P.3d 560, 566 (Ct. App. 2004) ("Thus, we learn that (a) the heart of the privilege is defamation and (b) the defamatory statement must be reasonably connected to the proceeding itself.").

Plaintiff also cites to *Recorp Partners v. Gust Rosenfeld, PLC*, 198 Ariz. 230, 8 P.3d 418 (Ct. App. 2000), in support of his claim that Ms. Pereira's statements were not made in furtherance of the Arizona Lawsuit. As an initial matter, Plaintiff's citation to the *Recorp* case is wholly improper, misleading, and even sanctionable. This is because the opinion in the *Recorp* case that Plaintiff refers to was actually ordered by the Arizona Court of Appeals to be *depublished* and "was withdrawn from the bound volume because it was redesignated as a memorandum decision." *See* 198 Ariz. 230, 8 P.3d 418 (*opinion ordered depublished*). The text of the opinion is not even contained within the current Arizona Reporter and Pacific Reporter volumes cited by Mr. Strojnik. Citation to unpublished (or depublished) memorandum decisions of Arizona courts has been strictly prohibited in Arizona since 1973. *See* Ariz. R. S. Ct. 111(c) ("Memorandum decisions shall not be regarded as precedent nor cited in *any court* . . . .") (emphasis added) (renumbered from Rule 48 in 1985); Ariz. R. Civ. App. P. 28(c). Indeed, the fact that this decision was specifically ordered to be *depublished* strongly suggests that the Arizona Court of Appeals did *not* want this case in particular to be cited as controlling authority or relied upon by any other courts. Not only did Plaintiff improperly cite the *Recorp* decision, it failed to disclose to this Court that it had been depublished.[4]

Furthermore, even if the Court did consider the *Recorp* decision, that case involved circumstances very different from those at issue here. In *Recorp*, the defendants had sent a memorandum to the limited partners of a partnership urging them to vote to replace the general partner for strictly business reasons. The court concluded that the statements were not protected under the absolute litigation privilege because, in context, they "were not

---

[4] In *Mangan v. Mangan*, 277 Ariz. 346, 258 P.3d 164 (Ct. App. 2011), the Arizona Court of Appeals personally sanctioned an attorney for citing to a memorandum decision as if it were precedent. The court concluded that:

> [T]he award of attorneys' fees is appropriate as a sanction pursuant to Rule 25, ARCAP, based on Mother's counsel's misrepresentation of the record and *reliance on a memorandum decision as legal authority*. Accordingly, to discourage like conduct in the future, responsibility for the award of attorneys' fees to Father shall be equal and joint and several between Mother and her appellate counsel.

*Id.* at 354, 258 P.3d at 172 (emphasis added).

made 'in furtherance of' the litigation." *Id.* "Rather, . . . they were made for the express purpose of encouraging the limited partners to take action *outside* the lawsuit." *Id.* (emphasis added). Instead of supporting Plaintiff's theory, this case actually highlights that Ms. Pereira's comments were designed to further the progress of resolving the litigation and promote the interest of justice because they were made for the express purpose of encouraging RCS and Mr. Strojnik to take the *appropriate* action *as part of* the Arizona Lawsuit; *i.e.*, to dismiss the "ridiculous complaint" against DCR.

Indeed, all of the allegedly wrongful statements here were made in furtherance of the litigation and to promote the interest of justice. Ms. Pereira's assertions that Mr. Strojnik "incompetently represent[s] clients" and has been disciplined by the state bar on several occasions, taken in context, were part of an attempt to convince the opposing party in the litigation and its counsel that there was no justification for Mr. Strojnik's flawed strategy of filing a frivolous lawsuit rather than commencing an arbitration as required by the Agreement, and to convey a strong message that if the lawsuit is not voluntarily dismissed, then RCS and Mr. Strojnik may be subject to sanctions for misconduct (as Mr. Strojnik has been in the past). And rather than making those statements to some uninvolved third party, they were made directly to the opposing party in the litigation in an attempt to convince it that the Arizona Lawsuit was unwarranted and unwise.[5] Furthermore, the statements also promoted the interest of justice because Defendants were attempting to enforce DCR's legitimate and bargained-for contractual right to have any disputes with RCS resolved in a confidential arbitration. For DCR, that is certainly an attempt to promote justice. Attempting to avoid wasting the judicial system's time and

---

[5] *Cf. Tennenbaum v. Arizona City Sanitary Dist.*, No. CV-10-02137-PHX-GMS, 2013 WL 2422684, *7–8 (D. Ariz. June 3, 2013) (concluding that allegedly defamatory statements contained in a letter were not protected by the absolute litigation privilege because the manner in which they were communicated did not further the litigation or the interests of justice where the letter was sent to 4,500 district customers who did not have a "close or direct relationship to the litigation . . . such that absolute judicial immunity should be imposed").

resources by vigorously demanding the arbitration that the parties agreed to also promotes the interest of justice.

Ms. Pereira's statements undeniably related to the Arizona Lawsuit and were intended to further the resolution of the litigation and promote the interests of justice. Accordingly, the absolute litigation privilege applies to the allegedly wrongful statements in this case and the Complaint should be dismissed with prejudice.

**II.    THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE ALL OF THE ALLEGED WRONGFUL STATEMENTS EITHER ARE SUBJECTIVE STATEMENTS OF "PURE OPINION" OR WERE SUBSTANTIALLY TRUE FACTUAL STATEMENTS.**

**A.    Almost All of Defendants' Alleged Wrongful Statements are Subjective Assessments Not Capable of Being Proved True or False.**

As Defendants argued in their Motion to Dismiss, Ms. Pereira's statement that Mr. Strojnik drafted a "ridiculous complaint (which even a 1st year law student could have seen you did this all wrong)," that he "should not be practicing law if [he] so incompetently represent clients," and that he is "obviously still not fit to practice law" is the kind of "'rhetorical hyperbole [and] vigorous epithet' used to criticize [plaintiff's] behavior" that, as a matter of law, cannot be defamatory. *Turner v. Devlin*, 174 Ariz. 201, 208, 848 P.2d 286, 293 (1993) (en banc).

Nearly all of the content of Ms. Pereira's emails are subjective "pure opinions" that by their nature cannot be proved true or false. This is clear from the circumstances and tenor of the emails, the use of colorful phrasing and rhetoric, and the fact that the characterizations themselves are inherently subjective. *See Partington v. Bugliosi*, 56 F.3d 1147, 1153 & n.10 (9th Cir. 1995) (rejecting defamation and false light claims because "statements about a lawyer's performance constitute 'subjective' statements and are not susceptible of being proved true or false"); *see also Turner*, 174 Ariz. at 207, 848 P.2d at 292 (rejecting defamation claim based on statements of plaintiff's "subjective impression" that the defendant's prior conduct was "rude and disrespectful" and "bordered on police brutality" because plaintiff's comments "have no bench mark with which to judge their accuracy").

1

          **B.**     **Defendants' Only Statement That Could be Considered a Statement of Objective Fact Was Substantially True When it Was Made.**

2

3        Plaintiff does not appear to dispute that Ms. Pereira's statement that Mr. Strojnik

4  was "currently on probation after numerous suspensions with the state bar association

5  (which followed client complaints for misconduct and malpractice)," was substantially

6  true when it was made. *See* Doc. 7 at 11–12.[6]  Instead, Plaintiff does nothing but flatly

7  claim that "[t]he record clearly notes that Plaintiff is a member of good standing and,

8  according to the State Bar, not incompetent or unfit to practice law." *Id.*  The fact that

9  Plaintiff is, for the time being, still licensed to practice law in Arizona has nothing to do

10  with whether Ms. Pereira's statements were substantially true when they were made. *See*

11  *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939, 941 (1991) ("In a

12  civil action for libel, the truth of the contents of the allegedly libelous statement is a

13  complete defense. Moreover, when proving the statement's truth, the defendant need not

14  prove the literal truth of every detail, but must only prove that the statements are

15  substantially true.").  The facts stated by Ms. Pereira about Mr. Strojnik's history of

16  attorney discipline were substantially true.  Ms. Pereira's opinion that Mr. Strojnik

17  "incompetently represent[s] clients" cannot be proved or disproved with comparison to

18  any objective bench mark, and the mere fact that an attorney has not (yet) been completely

19  disbarred is certainly not definitive proof that he competently represents clients.

20        Thus, even if the absolute litigation privilege did not apply, the Complaint should

21  still be dismissed for the independent reason that all of the alleged wrongful statements

22  were either subjective assertions of "pure opinion" or were substantially true when made.

23                                         **Relief Requested**

24        For the foregoing reasons, Defendants respectfully request that the Complaint be

25  dismissed with prejudice in its entirety.

26

27        [6]  The substantial truth of Ms. Pereira's statements about the prior disciplinary proceedings against Mr. Strojnik is well documented in Defendant's Motion. *See* Doc. 4
28  at 14-17.  Plaintiff's Response does not dispute any of those facts or arguments.

1

2   October 31, 2013                          **PERKINS COIE LLP**

3                                            By: s/ Brian C. Lake
                                            _____
4                                                Brian C. Lake
                                                 2901 N. Central Avenue, Suite 2000
5                                                Phoenix, AZ  85012-2788

6                                            Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3        ☒        I hereby certify that on October 31, 2013, I electronically transmitted the

4    attached documents to the Clerk's Office using the CM/ECF System for filing and to the

5    following counsel of record:

6                                    Peter Strojnik
                                    STROJNIK, P.C.
7                                    ps@strojnik.com

8

9        ☒        I hereby certify that on October 31, 2013, I served the attached document by

10    first class mail on Judge Susan R. Bolton, United States District Court of Arizona, 401

11    West Washington Street, Phoenix, Arizona 85003-2118.

12

13                                    s/ S. Neilson

14    111313-0002/LEGAL28253418.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28